The first case on the calendar is in re. 650 Fifth Avenue and we'll hear that case. Good morning your honor, Daniel Razumna for Claimants, 650 Fifth Avenue and the Alavi Foundation and I'm accompanied here by my co-counsel John Gleason. On December 12, 2019, the government sought and obtained a pre-trial seizure of Claimants' real properties, including a building located at 650 Fifth Avenue and four other properties across the country used as religious, health care, and educational centers. The government at the time portrayed a false sense of urgency, claiming that the immediate entry of the order was necessary to keep the building's operations intact. In reality, there was an existing protective order that did exactly that. The seizure of these real properties was complete. The district court divested Claimants of all rights as owners of real properties, including the right to manage the properties. Didn't the Claimants join in the request for a monitor to be appointed? Your honor, in April of 2010, the Claimants agreed with the government to the appointment of a monitor who had supervisory responsibilities only. If you look at the April 2010 monitor order, which was extended throughout this case except when there was a forfeiture order in place, all rights of property ownership remained with the Claimants. I'm talking about later than that. At some point, I thought the Claimants agreed with the notion of having someone in charge because that would enhance the ability of the building to draw and keep tenants. Is that not so? I would say it's not so, your honor. Judge Chin, what exactly happened was in the period of the monitorship, there was a recognition that tenants could negotiate with the monitor and that did have some ameliorative effects for the building. But all rights of property ownership remained with the Claimants. So what you're saying is correct that the monitor was the public face, but all decisions about negotiating leases, negotiating with third parties, evicting tenants, control of the properties, managing the properties, those remained with Claimants. So essentially the monitor was the public face. Is there a pot of money accumulating now? There is, your honor. It has accumulated. And how much is that? Do you have an idea of what it is at the moment? I know over $30 million since January of 2018. And if the Claimants win at trial, some of that money would be released to the Claimants. Is that right? If the Claimants win at trial, all of it will be released to Claimants other than the partner's share of that, your honor. Let me ask you this. What exactly are you asking us to do? Specifically, what relief do you want on this appeal? Your honor, what we are asking is that the district court order, finding that there was an unlawful seizure and the money that has accumulated should be released, we are asking that that be affirmed. The one thing that we disagree with the district court, your honor, is that Judge Preska, in finding that there was a seizure without adequate pre-deprivation process, found that the unlawful seizure occurred on the date of the mandate, which was December 12, 2019. The reality, your honor, is that the seizure goes back all the way to September 2017. And that seizure resulted from the verdict in the trial. That verdict was overturned, by your honor, by Judge Shin and Judge Wesley in the last appeal. There was no valid basis for that seizure, for that order. It's a legal non-legal. What was Judge Preska's rationale for pegging the date of the mandate? Judge Preska found that she was not empowered to overturn this court's protective order. And in September 2017, Judge Forrest, the original trial court judge, entered this protective order that essentially removed, divested claimants of all rights. And in January of 2018, this court prohibited any funds from the building going to the claimants. And Judge Preska said, how am I to tell the Second Circuit that they're wrong? And we pointed out, your honor, that it wasn't that this court was essentially operating on a fair playing field. It would be exactly the same as if a federal agent went into a magistrate judge and provided a deliberately false affidavit for a search warrant. That search warrant would be invalid, even though the magistrate judge was reasonable in relying on that. And in this court's order of January 2018, it relied on the verdict to basically prohibit any funds from going to claimants. However, your honor, that verdict was vacated. As your honor probably recalls, there was, this court found, lacking in fair and adequate process. This court found that that verdict, the trial court, made mistakes on a troubling pattern of errors on relatively straightforward issues, and that the government deliberately took shortcuts. That's exactly- You keep referring to it as a seizure. Why is this a seizure and not a restraining order? So the Supreme Court has defined a seizure in U.S. v. Jacobson as any meaningful interference with property rights and property interests. In this case, Judge Preska, in 2019, removed all rights of property ownership. It wasn't just a restraint on the rental income. We lost the right to manage the building, to negotiate with tenants, to physically occupy and control this property. We lost that. That was a complete divestiture of rights, and it's not a restraint on income. But as you acknowledge, the money is still there, at least $30 million worth, which will be yours if you prevail. So it hasn't been seized in the sense that it is, I mean, it sounds to me like it's been restrained and it hasn't been seized. Your Honor, if you focus on the- Temporary, and it may be just a temporary restraint. So Your Honor, in Jacobson, it said a meaningful restraint or a meaningful interference with property rights. A property right is to receive income from the property. We don't have that right. The fact that, and I will cite to you a Supreme Court case, Fuentes v. Shevin, and what it says in the Fifth Amendment violation, it says that the right to be heard does not depend on an advance showing that one will prevail at a hearing to one who protests against the taking of his property without due process. It's no answer in the particular case that it would have led to the same result. The point I'm making, Your Honor, is we are losing substantially as a result of this property being taken from us. We don't have the right to defend ourselves using money that Judge Preska has found to be ours, money that we're entitled to. And so it's not enough to say that maybe one day you will be able to get that money. We don't have it now. And what, and it would grant it a stay, but what is scheduled in the district court now? On October 13th, there is a probable cause hearing under 985. That's a hearing, probable cause will be determined, and we will have a right to present our affirmative defenses. Now, one of the affirmative defenses is statute of limitations, and if Your Honor recalls, this court compelled the government to produce statute of limitations discovery, they still haven't provided one page. So that demonstrates further that this order by Judge Preska was wrong, was invalid, and Judge Preska recognized that because she never even made a probable cause finding. All right, you've reserved three minutes for rebuttal, we'll hear from the other side. Your Honor, can I just sort of be heard on one very quick thing? I understand that the private judgment creditors represented by Mr. Petroselli have asked to have some of the government's time. They have waived all claims, they have acknowledged that in their briefing. I think at best they're an amicus, but they certainly are not parties to this action. So I'm not sure why they're here, and I think it's inappropriate. All right, your views are noted. I don't believe we got a request to split the time, but you know what, it's okay with me. We'll hear from the government, and then Mr. Petroselli can do two minutes. Thank you, Your Honor. May it please the court, my name is Daniel Tracer, and I represent the United States on this appeal and in the district court. I want to start by addressing Judge Parker's question, because I think it cuts right to the heart of the case, which is, why is it that Judge Preska did not feel that income going back beyond December should be released? And the answer is not because of a power struggle between her and the Court of Appeals, it's nothing of the sort. It's for the simple reason, Your Honors, that the order that was issued in January 5th, what we refer to as the Monsanto order, which cut off the fees that a lobby was getting as a result of its ownership interest in the partnership, that order was entered after three rounds of briefing. And so what James Daniel Goode teaches, James Daniel Goode, and I'm going to frame this a little broadly if that's okay, generally under Matthews v. Eldridge, there's a three-part balancing test when we consider due process claims. This is effectively a due process claim, and so we look at the nature of the interest infringed, the government's interest, and the potential for a wrongful violation absent the process. And what James Daniel Goode says is we have a... What valid claim do you have at this minute to hold on to that money? So Your Honor, under the Rule 98... You want to hold on to it pending some probable cause hearing in the future, is that right? So Your Honor, it's not just that, Your Honor. Under 983J, there's a provision that if property would be subject to forfeiture, it cannot be dissipated right now, and that's the Supreme Court's holding in Monsanto in Kaplan v. Drysdale that this court relied upon when it issued the order in January of 2018. In other words, when the government brings a forfeiture claim, we have authority under 983J, we're not taking that property, we're not seeking to hold on to any property. We're simply seeking that the partnership, which collects rents, among other things, uses the rent to take care of the building, to pay broker fees, commissions, and things like that. It simply cannot, a lobby as the managing partner cannot take money out of that pot from the partnership. It cannot exercise its right as the managing partner of a partnership pending these proceedings. That money's not going anywhere, it's sitting effectively in a place where it will be preserved. So if down the line, as Your Honor said before, the claimants were to prevail, that money would be entirely available for them. It's simply a question of effectively immunizing the money from forfeiture while this case plays out. Your opponents make a case that they need the money, at least in part, for tyranny's fees. So Your Honor, under Monsanto and Kaplan v. Drysdale, the Supreme Court has said that when property will be subject, or at the end of the day could be subject to forfeiture, even in a criminal case, even when there's a Sixth Amendment right to counsel, that is not a reason to release funds pending the forfeiture case. All the more so... Yeah, but those cases contemplate a valid seizure of the funds. Here we don't have that. So I think Your Honor... Aren't you putting the cart before the horse? Let's seize the funds, let's hold on to them, and then let's have a probable cause hearing later. So I think numerous cases, though, approve of that process when the seizure is temporary and limited both in time and in scope, which it is here. When the case returned to the district court on December 12th, claimants had made a motion in this court, in the Court of Appeals, a post-judgment motion to vacate this court's restraining order. And this court basically said, no, we're not doing that. We have our order based on Monsanto and Kaplan v. Drysdale. The parties are welcome to continue that dialogue in the district court. This court didn't say there's an improper seizure. And so when we went back to the district court, that process was continued, and we asked the district court to continue the same provisions that had been in place by this court. And in fact, when Mr. Resumnos spoke before, and I think twice in his brief, claimants concede that absent the December 12th order, what would have governed would have been this court's January 2018 order, what we call the Monsanto order. So the status quo would have been that funds were not permitted to be released to pay for attorneys' fees. Now, the partnership could still use those funds to take care of the building, as it had been doing for years. But it could not release them to the managing partner. The problem I have as a backdrop to this particular argument is that for in proceeding after proceeding, year after year, the government here has, you know, one significant error after another. I don't recall in my 25 years on the bench seeing a case that the government has screwed up like this one has. The warrant, the good faith arguments, the reconstruction arguments, and on and on and on. And then not to mention the trial, which was completely botched by the government. And your opponents have incurred massive legal fees because of all of these government errors. I've never seen anything like this. This is a case where, as far as I'm concerned, you know, the government's capacity for certitude is exceeded only by its capacity for error. And your honor, we're not here seeking to relitigate any of the issues from our, I would hope not. There are 130 pages largely devoted to arguments the government has made that don't hold up wookie errors that the government has made. I mean, the search warrant sequence of events is just mind boggling. I have a question. Yes, your honor. My question is, you are disagreeing with Judge Preska's order to the extent that you want no monies released, correct? That's right. We believe the court should continue the Monsanto order that this court entered. Okay. Should continue that, and there should be a probable cause hearing or not? Correct. In an abundance of caution, we would agree that there should be a probable cause hearing, which is scheduled for October 13th. I think having that hearing will aid this court. Obviously, if there's no probable cause, this appeal will be moved. If there is probable cause, then it would be important for this court to know that. Okay. Just assume, arguendo, that I think that the vacated trial cannot be the probable cause finding. So, in which case, you do need a probable cause hearing, correct? We're agreeing. We think that, among other things, the court made a probable cause finding in November 2013 that hasn't been appealed, but nevertheless, your honor, it's a new issue in the sense that we agree we're going to proceed with a probable cause hearing. Where is the probable cause finding? Excuse me, I'm sorry. Yeah, so right now, we have no finding of probable cause then. So, there is an unappealed finding of probable cause in November 2013 after the summary judgment. We asked the district court to impose the Monsanto relief we're seeking now. The court found probable cause, but believed it had discretion to allow attorney's fees at that time. Oh, where's the... There's a line on there. Give me the record cite for the finding. Absolutely, your honor. What were the exigent circumstances? I apologize, your honor, that I'm slow in finding the docket, but it was entered in November of... Oh, I found it. It is docket entry number 1023. I apologize, and I realize I'm over my time, but I'm happy to answer the question, if your honors will permit. I think I asked, what were the exigent circumstances? Yeah, so your honor, when the case came back in December 12th, the exigency was as follows. Our forfeiture claims seek any proceeds that are traceable to the building, and so absent complete clarity at that point, money could go out the door to pay attorney's fees. That would be completely unrecoverable to the government, and then we would have money that could be forfeited down the line, and not in accordance with Monsanto and Capra and Drysdale, could have been forfeited. So the exigency of that money disappearing. Multiple courts have recognized, for example, DACARA, which is cited in our brief, that the loss of funds, which cannot be recovered, constitute exigent circumstances. And if I could just add one last point to that, to the extent that at that time, this court does not find that there was probable cause, and we submit there is, but even if the court finds there wasn't, that is a substantive issue, which is different than a due process issue. In other words, James Daniel Goode is only concerned on ex-parte seizures without notice. The December 12th order was entered essentially as a fourth round of litigation on this issue, and to the extent that the court is concerned with the lack of probable cause, that would put it into context. But let me ask you this, if the district court proceeds with its probable cause hearing, and finds probable cause, then even under 985, the government is entitled to seizure? That's your position? Correct. The government's entitled to continue to... Even without exigent circumstances? Correct. If there's a probable cause finding with a hearing, which is what's expected to happen on October 13th, there's no question anymore. I think that's right. What happens if the court finds no probable cause? If the court finds that there is no probable cause, and claimants get all their money, we would have no basis to continue the restraint of funds. All right, thank you. Let's hear from the other party. Mr. Petricelli? Good morning, Your Honor. May it please the court, Patrick Petricelli on behalf of the private plaintiffs. Just a couple of quick points. One, in addition to the docket entry at 1023, and the joint appendix at A348, Judge Forrest also made a determination that she had the authority on making a probable cause determination. She had the authority to place the assets in the possession... Excuse me, Counselor. Excuse me, Counselor. Are you arguing on behalf of the government, or are you arguing on behalf of your clients? We're arguing on behalf of our clients in favor of the government's position that there is probable cause to allow for the continued restraint of the building, and eventually filing a probable cause hearing for a seizure of the property. And I apologize, I'm not sure why my video isn't showing up here. I had it turned on, but in any event... It's all right. We see you. Oh, thank you. In response to Judge Parker's question with respect to the authority to enter a restraining order, even though there is no longer an order of forfeiture, 18 U.S.C. 985-F3 specifically contemplates that the court is authorized to enter a restraining order, and we submit that the claimant's position here would render that a nullity because they view no distinction between a restraining order and a seizure. Claimants spoke a lot about the September 2017 order that was entered by Judge Forrest, and the December 2019 order that was entered by Judge Preska, but they ignored entirely the November 16, 2017 order that was entered by this court. In that order, which the claimants requested, this court specifically superseded ECF-2078, which is the September 29, 2017 order, and that claimant's request entered all of the conditions with respect to the trusteeship and the powers that were given to the trustee that the claimants complained of. The only issue that was then left open was the restraining order, which this court accurately imposed on January 5, 2018, and we submit that that should be continued pending the probable cause hearing. All right, if there's no other questions... That's it. Thank you. And I was mistaken before. I had authorized that the time be split between the government and the private plaintiffs. We'll hear the rebuttal. Mr. Rizzuto, why shouldn't we just let the district court conduct its probable cause hearing on October 13th or whenever the district court finds it convenient? Your Honor, because there's been an unlawful seizure, that unlawful seizure has prevented us from adequately preparing for this conference, this hearing that's coming up for probable cause. Your Honor, and Judge Parker... It wouldn't be... I mean, if there is a finding of probable cause, assuming, putting aside whether there had been one before, if there is a finding of probable cause now, why wouldn't the government be entitled to a seizure under 985? They would going forward, Your Honor. But all courts that have considered this very issue about the remedy for an unlawful seizure have held that the appropriate remedy is disgorgement of the rent. So that has been universally accepted, and the reason for that, Your Honor, is to deter government misconduct, just like here. There's no other available remedy, and in this case, Your Honor, withholding rent that Judge Preska has ordered has been unlawfully seized and should be returned prevents us from adequately preparing for that. When this probable cause hearing takes place, if the government were to win from that point forward, the entitlement that we have to those funds would be 10%. But there has not been a probable cause finding. The 2013 decision... What is the authority that says, only going forward, the government would be entitled to the seizure only going forward? Under 985, Your Honor, the statute specifically provides that except as provided in this section, real property that's subject to a civil forfeiture action shall not be seized before entry of an order of forfeiture, and if you look at what is provided in this section, under 985D, it provides the two exceptions. One, real property may be seized where the government notifies the claimants of its intent to seize, provides notice and opportunity to be heard, which hasn't happened, as Judge Preska found, or in exigent circumstances establishes probable cause, which also, as Judge Preska properly found, has not happened. What about Judge Forrest's finding in 2013? Why is that not probable cause? So, I will tell you, Your Honor, Judge Forrest, in 2013, said she was mindful that the government's burden on summary judgment, no genuine issue of material fact, is higher than the probable cause standard for pretrial restraint of property subject to forfeiture. She did not find probable cause. She said she didn't need to because she found summary judgment. That was vacated by this court, acknowledged by both Judge Forrest and the government, because in 2016, upon remand, we did get a return to management rights and the return of rent. We got those rights back. If probable cause had been found, we would not have gotten that right back in 2016. Now, this return of rent remedy, Your Honor, has been acknowledged by every court to have considered this, and the government did not raise this before the district court. Not only is it right, but this is an argument that has been waived by the government, and I just want to distinguish the one case that the government seems to rely on most for eliminating this return of rent remedy. That's the Cosney case by the Second Circuit. In that case, the court found that you could wait until the probable cause determination, and if the government succeeded, then the property did not have to be returned. It was not a rental income. It was not an income at all. That case is distinguishable, Your Honor, because in Cosney, that dealt with personal property, and as this court acknowledged in Matthews v. Eldridge, certain property is entitled to greater protection. James Daniel Goode said real property requires a pre-deprivation hearing or, under extant circumstances, a probable cause determination. You're out of time, but I gather you oppose having the probable cause hearing go forward. We do, Your Honor. We have been deprived of money that we are entitled to under Judge Preska's order. You want the money without a hearing, in other words. You want the money without a hearing. No, we want the money so that we can prepare for the hearing, and we are absolutely willing to do a hearing, and it should happen. We believe the government should produce the discovery that this court compelled a year and two months ago, but we're willing to do the hearing, Your Honor, and we fully acknowledge if probable cause is shown under 985 at a hearing, we have a reasonable opportunity to be heard. It stops there, but until that hearing happens, we're entitled to the rent, and the disforgement of this rent is what the remedy should be, and the government has waived any challenge to that, Your Honor, and it's been acknowledged by every circuit to have considered that, which is, I think, around seven circuits at this point, Your Honor. One last question. Does this building continue to accrue rents? Is the building rented up? Is it viable? It is, Your Honor. It continues to receive rents. The property has actually increased in value since the time this case began, substantially. It is still rented. It's still doing quite well, and, Your Honor, it has done well, as the trustee has stated to Judge Preska, both when we manage the property, claimants manage the property, and when she has. She's the public face. It's doing very well, and just one last point on Judge Parker's point earlier. In the last appeal, where this court found troubling errors and vacated based on shortcuts taken by the government, this is the ultimate shortcut. This is a way that the government is seeking to win this case, prevail by depriving claimants of money that they are entitled to, that Judge Preska found they are entitled to. Why? Because they skipped the procedures under 985. Mr. Tracer pointed to 983. This is a real property case. We have an ownership in real property, and that is why 985 applies. Judge Preska properly found that the permissions had not been followed up. You don't have to belabor that. The government in this case has been cutting corners the whole time. Aye. Thank you. Thank you.